UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES EARL ODOMS, JR.,

          Plaintiff,

v.

M. BURGESS, et al.,

          Defendants.
_____/

Case No. 1:25-cv-64

Honorable Hala Y. Jarbou

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. The events about

which he complains occurred at that facility. Plaintiff sues the following ECF staff in their individual and official capacities: Warden M. Burgess, Deputy Warden Unknown Clouse, Assistant Deputy Warden J. Erway, Assistant Deputy Warden Unknown Krause, Resident Unit Manager T. McColl, Acting Prison Counselor S. Larson, Inspector J. Thomas, Acting Resident Unit Manager M. Turner, Acting Prison Counselor Unknown Bitterman, and Inspector Unknown Pelky. (Compl., ECF No. 1, PageID.2, 5–6.)

In Plaintiff's complaint, he alleges that on August 21, 2024, ECF Security Classification Committee (SCC) members Defendants Erway and Turner "classified Plaintiff to protective custody." (*Id.*, PageID.3.) The next day, "Plaintiff was placed in [ECF] Level Four/Specialized Housing Unit #7 . . . where he was housed in the cell with prisoner James Tems." (*Id.*)

On September 22, 2024, "Plaintiff submitted a handwritten kite to" Defendants Burgess, Clouse, Krause, Bitterman, McColl, Thomas, and Pelky, as well as to non-party McShane, "informing them that his saf[e]ty as a protective custody prisoner cannot be met while housed in Housing Unit #7," and "[h]e should be isolated/segregated from all other prisoners." (*Id.*) Plaintiff states that "[t]hese kites were handwritten and sent to each of the above[-]named Defendants." (*Id.*)

On October 4, 2024, "prisoner James Tems was removed from Plaintiff's cell." (*Id.*) On October 10, 2024, "prisoner Brjra . . . was placed in the cell with Plaintiff." (*Id.*) Plaintiff alleges that "Mr. Brjra is a patient in the outpatient treatment program . . . with severe mental illness and an extensive and documented history of reporting false Prison Rape Elimination Act (PREA) [complaints] on his cellmates and other prisoners." (*Id.*) On October 14, 2024, "Mr. Brjra reported a false PREA [complaint] against Plaintiff," claiming that Plaintiff sexually assaulted prisoner Brjra "while Brjra was sleep[ing] in their cell." (*Id.*) Thereafter, "Plaintiff was placed in

2

segregation where he was interrogated by [ECF] staff members," and "Plaintiff denied any and all of Brjra's PREA report." (*Id.*, PageID.7.) Plaintiff states that he "has been kept in segregation." (*Id.*)

On October 22, 2024, ECF staff members "submitted a notice of intent (NOI) to classify Plaintiff to administrative segregation," and "the NOI was upheld" on October 28, 2024. (*Id.*) Subsequently, on October 30 and 31, 2024, Defendants Burgess, Larson, Turner, and Erway "documented on Plaintiff's segregation behavior review sheet their reason for classifying Plaintiff to administrative segregation, stating[:] 'Inability to be managed with [general population] privileges.'" (*Id.*) Plaintiff claims that Defendants Burgess, Larson, Turner, and Erway "made this statement without producing any evidence to support Mr. Brjra's PREA allegations against Plaintiff." (*Id.*)

Plaintiff alleges that as a result of this statement by Defendants Burgess, Larson, Turner, and Erway, other ECF staff members and inmates "believe Mr. Brjra's PREA allegations against Plaintiff to be true," and Plaintiff has been given nicknames, such as "prison rappiest" and "booty juice." (*Id.* (spelling in original retained).) Additionally, Muslim prisoners have "threaten[ed] to kill Plaintiff for allegedly sexually assaulting another Muslim (Brjra)." (*Id.*)

On December 21, 2024, a porter came to Plaintiff's cell and said: "B[****] you rapped Brjra so for that I'mma knock you out and make you suck my d[***]." (*Id.* (spelling in original retained).) Then, on December 25, 2024, "a prisoner threw a cup of urin[e] in Plaintiff's cell." (*Id.*, PageID.8.)

Plaintiff claims that "Defendants['] failure to protect Plaintiff has caused Plaintiff to suffer mental, emotional, and physically," and that he "has not been able to interact in daily routine activities such as showering, eating, sleeping, and leisure activities." (*Id.* (grammar in original

3

retained).) Plaintiff states that his "family and friends have cut all ties with Plaintiff due to the PREA allegations." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his rights under the Eighth Amendment to the United States Constitution by failing to protect him. (*See id.*) The Court also construes Plaintiff's complaint to raise Fourteenth Amendment due process claims against all Defendants and state law defamation claims against Defendants Erway, Turner, Burgess, and Larson. (*See id.*, PageID.4, 7.) Plaintiff seeks monetary damages and injunctive relief. (*Id.*, PageID.4.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

4

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

Plaintiff sues Defendants in their official and individual capacities. (Compl., ECF No. 1, PageID.2, 5–6.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

5

Here, Plaintiff seeks monetary damages and injunctive relief. (Compl., ECF No. 1, PageID.4.) However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). In the present action, Plaintiff does not allege that the activities alleged in the complaint are likely to occur to him again. Instead, Plaintiff's allegations relate solely to past harm, not future risk of harm.

Therefore, for these reasons, Plaintiff has failed to state a claim against Defendants in their official capacities upon which relief can be granted. Accordingly, Plaintiff's official capacity claims against Defendants will be dismissed for failure to state a claim.

### B.     Eighth Amendment Failure to Protect Claims

Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to protect Plaintiff from his cellmate's false PREA complaint against him. (*See* Compl., ECF No. 1, PageID.4, 7.)

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

In order for a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

7

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

Here, Plaintiff alleges that on August 21, 2024, ECF SCC members Defendants Erway and Turner "classified Plaintiff to protective custody," and the next day, "Plaintiff was placed in [ECF] Level Four/Specialized Housing Unit #7 . . . where he was housed in the cell with prisoner James Tems." (Compl., ECF No. 1, PageID.3.) On September 22, 2024, "Plaintiff submitted a handwritten kite to" Defendants Burgess, Clouse, Krause, Bitterman, McColl, Thomas, and Pelky, as well as to non-party McShane,[1] "informing them that his saf[e]ty as a protective custody prisoner cannot be met while housed in Housing Unit #7," and "[h]e should be isolated/segregated from all other prisoners." (*Id.*) Plaintiff states that "[t]hese kites were handwritten and sent to each of the above[-]named Defendants." (*Id.*) Subsequently, on October 4, 2024, "prisoner James Tems was removed from Plaintiff's cell," and on October 10, 2024, "prisoner Brjra . . . was placed in the cell with Plaintiff." (*Id.*) Plaintiff alleges that "Mr. Brjra is a patient in the outpatient treatment program . . . with severe mental illness and an extensive and documented history of reporting false . . . []PREA[] [complaints] on his cellmates and other prisoners." (*Id.*) On October 14, 2024, "Mr.

---

[1] The Court notes that McShane is not identified as a Defendant in either the case caption of the complaint or the section of the form complaint where Plaintiff lists the Defendants in this suit. (*See* Compl., ECF No. 1, PageID.2, 5–6.) Federal Rule of Civil Procedure 10(a) requires that a plaintiff "name all of the parties" in "[t]he title of the complaint." Fed. R. Civ. P. 10(a). Further, this Court has previously concluded that "[o]nly those individuals and entities identified in the caption of the complaint are properly considered defendants in an action, regardless of the complaint's other contents or allegations." *Jones v. Smith*, No. 1:10-cv-568, 2012 WL 726665, at *1 (W.D. Mich. Feb. 1, 2012), *R & R adopted*, 2012 WL 726621 (W.D. Mich. Mar. 6, 2012); *see also Brown v. Mich. Dep't of Corr.*, No. 1:22-cv-16, 2022 WL 2900888, at *1 n.2 (W.D. Mich. Jul. 22, 2022) (concluding that corrections officers identified as defendants in a particular count of the complaint, but not named in the caption or in the form complaint "list of parties" were not parties to the action). Accordingly, any intended claims against any non-party individual discussed in the complaint are subject to dismissal for failure to state a claim upon which relief may be granted.

8

Brjra reported a false PREA [complaint] against Plaintiff," claiming that Plaintiff sexually assaulted prisoner Brjra "while Brjra was sleep[ing] in their cell." (*Id.*)

As an initial matter, with respect to Defendants Erway, Larson, and Turner, Plaintiff alleges no facts to suggest that they had any involvement in, or knowledge of, Plaintiff's housing unit placement prior to the October 14, 2024, incident with Plaintiff's cellmate. Instead, Plaintiff alleges only that they were involved in classifying him to administrative segregation following the October 14, 2024, incident. Under these circumstances, Plaintiff fails to show that Defendants Erway, Larson, and Turner knew of any risk of harm to Plaintiff prior to the October 14, 2024, incident, let alone that they knew of such a risk and disregarded it. Moreover, although Plaintiff alleges that Defendants Erway, Larson, and Turner were involved in his placement in administrative segregation in October of 2024, and that while Plaintiff was in administrative segregation, a prisoner working as a porter verbally threatened Plaintiff and another prisoner "threw a cup of urin[e] in Plaintiff's cell" (*id.*, PageID.7–8.), Plaintiff alleges no facts to suggest that anyone, let alone Defendants, had reason to know that Plaintiff faced a substantial risk of harm while in administrative segregation. Accordingly, for these reasons, Plaintiff fails to state Eighth Amendment failure to protect claims against Defendants Erway, Larson, and Turner.

With respect to Defendants Burgess, Clouse, Krause, Bitterman, McColl, Thomas, and Pelky, Plaintiff alleges that he sent "handwritten kite[s] to" Defendants Burgess, Clouse, Krause, Bitterman, McColl, Thomas, and Pelky, "informing them that his saf[e]ty as a protective custody prisoner cannot be met while housed in Housing Unit #7," and "[h]e should be isolated/segregated from all other prisoners." (*Id.*, PageID.3.) Plaintiff alleges that he sent these handwritten kites to Defendants on September 22, 2024, before Plaintiff was even housed with prisoner Brjra. (*Id.*) As an initial matter, although Plaintiff alleges that he sent "handwritten kite[s]" to these Defendants,

9

it is not at all clear that they actually received them. Moreover, even setting this issue aside, although it is clear that Plaintiff wanted to "be isolated/segregated from all other prisoners," Plaintiff alleges no further facts explaining why he sought this type of placement and why this type of placement was necessary. (*Id.*) And, because Plaintiff sent the kites to Defendants before he was even housed with prisoner Brjra, the kites necessarily did not include any information about a risk of harm from Brjra. (*Id.*) Furthermore, although Plaintiff alleges in a conclusory manner that "[prisoner] Brjra is a patient in the outpatient treatment program . . . with severe mental illness and an extensive and documented history of reporting false . . . []PREA[] [complaints] on his cellmates and other prisoners," Plaintiff alleges no facts to suggest that Defendants were personally involved in placing prisoner Brjra and Plaintiff in the same cell. (*Id.*) A claimed constitutional violation must be based upon active unconstitutional behavior, and the acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). In this action, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim.

"[P]risons are inherently dangerous places." *Brown v. Budz*, 398 F.3d 904, 909, 913 (7th Cir. 2005). Without facts about why Plaintiff was placed in protective custody and why he sought to "be isolated/segregated from all other prisoners," Plaintiff necessarily fails to show that he faced a substantial risk of harm because he fails to identify any harm that he faced. Likewise, because Plaintiff fails to explain the harm that he faced, he necessarily fails to show that Defendants Burgess, Clouse, Krause, Bitterman, McColl, Thomas, and Pelky knew of a substantial risk of harm to him, let alone that they knew of such a risk and disregarded it.

10

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment failure to protect claims will be dismissed for failure to state a claim.

### C.     Fourteenth Amendment Due Process Claims

#### 1.      Procedural Due Process Claims

The Court generously construes Plaintiff's complaint to raise a Fourteenth Amendment procedural due process claim regarding his placement in administrative segregation following the October 14, 2024, incident with Plaintiff's cellmate.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228–29 (1976). Further, the United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum*, 427 U.S. at 225.

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due

11

process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim*, 461 U.S. at 250.

Here, Plaintiff alleges that after the October 14, 2024, incident with Plaintiff's cellmate, ECF staff members "submitted a notice of intent (NOI) to classify Plaintiff to administrative segregation," and "the NOI was upheld" on October 28, 2024. (Compl., ECF No. 1, PageID.7.) Thereafter, on October 30 and 31, 2024, Plaintiff alleges that Defendants Burgess, Larson, Turner, and Erway "documented on Plaintiff's segregation behavior review sheet their reason for classifying Plaintiff to administrative segregation, stating[:] 'Inability to be managed with [general population] privileges.'" (*Id.*) Plaintiff claims that Defendants Burgess, Larson, Turner, and Erway "made this statement without producing any evidence to support Mr. Brjra's PREA allegations against Plaintiff."[2] (*Id.*)

---

[2] To the extent that Plaintiff intended to claim that Defendants violated the PREA, Plaintiff fails to state such a claim because Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))); *see McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y.

As an initial matter, Plaintiff fails to allege any facts to show that Defendants Clouse, Krause, Bitterman, McColl, Thomas, and Pelky were involved in his placement in administrative segregation following the October 14, 2024, incident. And, Plaintiff's "[s]ummary reference to a single, five-headed 'Defendants' [or staff members] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)). Therefore, for this reason alone, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendants Clouse, Krause, Bitterman, McColl, Thomas, and Pelky regarding his placement in administrative segregation. *See, e.g.*, *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Furthermore, turning to the merits of Plaintiff's claims, as to the first category of a procedural due process claim—the existence of a deprivation that will inevitably affect the duration of a prisoner's sentence—Plaintiff does not allege, nor can he allege, that his placement in administrative segregation affected the duration of his sentence. As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. In *Sandin*, the Supreme Court concluded that placement in segregation for thirty days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that

---

2014) ("[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate." (quoting *Amaker v. Fischer*, No. 10-cv-977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014))); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Therefore, any intended claims pursuant to the PREA are subject to dismissal for failure to state a claim.

placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that sixty-one days in segregation is not atypical and significant). Instead, generally only lengthy periods of segregation, such as periods lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest). Here, Plaintiff alleges that after the October 14, 2024, incident with his cellmate, he was placed in segregation. (Compl., ECF No. 1, PageID.7.) Without providing any further explanation or facts, Plaintiff states that he "has been kept in segregation." (*Id.*) Even assuming, without deciding, that Plaintiff intended to allege that he had been held in segregation from mid-October 2024 to January 1, 2025, the date on which he signed his complaint, Plaintiff does not allege that he was placed in segregation for an extended period of time. Instead, Plaintiff's allegations suggest that when he filed the complaint, he had been held in segregation, at most, for a less than three-month period. And, Plaintiff does not allege any other facts to suggest that this placement was an "atypical" and "significant deprivation." Plaintiff, therefore, has failed to allege any facts to show that his placement in segregation triggered a right to due process.

Accordingly, for the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim.

### 2. Substantive Due Process Claims

To the extent that Plaintiff intended to raise a substantive due process claim regarding the events in the complaint, as explained below, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. &*

*Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, the facts alleged in the complaint fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016).

Accordingly, for the foregoing reasons, any intended Fourteenth Amendment substantive due process claims will be dismissed.

### D.     State Law Claims—Defendants Erway, Turner, Burgess, and Larson

When setting forth the relief he seeks in this lawsuit, Plaintiff states that he seeks to recover monetary damages "on the basis of" Defendants Erway's, Turner's, Burgess's, and Larson's "defamation of Plaintiff's character." (Compl., ECF No. 1, PageID.4.) The Court generously construes this statement as raising state law defamation claims against Defendants Erway, Turner, Burgess, and Larson.

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v.*

15

*Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants Erway, Turner, Burgess, and Larson will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

## Conclusion

Having conducted the review required by the PLRA, the Court determines Defendants Clouse, Krause, McColl, Thomas, Bitterman, and Pelky will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Further, Plaintiff's federal claims against Defendants Erway, Turner, Burgess, and Larson will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), and Plaintiff's state law claims against Defendants Erway, Turner, Burgess, and Larson will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not

be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

    A judgment consistent with this opinion will be entered.

Dated: March 10, 2025            /s/ Hala Y. Jarbou
                                      HALA Y. JARBOU
                                      CHIEF UNITED STATES DISTRICT JUDGE